IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00968-REB-KLM

KATHLEEN CHYTKA,

      Plaintiff,

v.

WRIGHT TREE SERVICE, INC.,

      Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for Summary Judgment** [Docket No. 81; Filed May 29, 2012] ("Plaintiff's Motion)" and on Defendant's **Motion for Summary Judgment** [Docket No. 115; Filed August 16, 2012] ("Defendant's Motion"). Plaintiff proceeds in this matter as a *pro se* litigant.  On August 17, 2012, Defendant filed a Response [#117] to Plaintiff's Motion.  Plaintiff did not file a Reply.  On August 18, 2012, Plaintiff filed a Response [#118] to Defendant's Motion.[1]  On September 24, 2012, Defendant filed a Reply [#128].   Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for a recommendation regarding disposition.  The Court has reviewed the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the

---

[1] Because Plaintiff's Response exceeded the page limitations set by the District Judge, the Court struck pages 21-43 of the Response and granted Plaintiff leave to amend her Response. *See Minute Order* [#126].  Plaintiff did not file an amended Response, and the Court does not here consider pages 21-43 of her Response.

reasons set forth below, the Court respectfully **RECOMMENDS** that Plaintiff's Motion [#81] be **DENIED** and that Defendant's Motion [#115] be **GRANTED in part and DENIED in part**.

## I. Summary of the Case[2]

In the Amended Complaint [#13],[3] Plaintiff asserts ten claims against Defendant, her former employer: (1) hostile work environment; (2) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.; (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; (4) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; (5) disparate treatment in violation of Title VII; (6) violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); (7) violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq.; (8) retaliation in violation of Title VII; (9) promissory estoppel; and (10) unjust enrichment.

Defendant is an employee-owned company, which offers a variety of vegetation management services, including clearing trees and other vegetation from utility and mechanical lines, right-of-way mowing, land clearing, herbicide application, and substation restoration and maintenance. *Ex. A, Aff. of Schuster* [#115-1] ¶ 2. Defendant has been

---

[2] The Court largely adopts Defendant's clear and well-supported statement of facts, where not contradicted by Plaintiff's evidence. *See Def.'s Motion* [#115] at 2-7; *Def.'s Response* [#117] at 7-9.

[3] Plaintiff attested to the veracity of her Amended Complaint, as demonstrated by the notarized "Verification" at the end of document. *See Am. Compl.* [#13] at 27. The Court therefore treats the Amended Complaint as an affidavit and accepts the allegations stated therein as true in the absence of contradictory material facts proffered by Defendant. *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997). For the sake of clarity, the Court reserves discussion of the additional facts located in the Amended Complaint to the Analysis section below.

in continuous operation since 1933.  *Id.* ¶ 3.  While Defendant maintains its home office in Des Moines, Iowa, the company operates in 26 different states, including Colorado.  *Id.* ¶ 3.

In September 1999, Plaintiff started working for Defendant in the position of a Job Planner.  *Ex. B, Depo. of Plaintiff* [#115-2] at 22-23.[4]  In that capacity, she was responsible for providing notice to, interacting with, obtaining permission from, and answering questions for homeowners and businesses in connection with Defendant's services, including "permitting" (when Defendant initiated contact with the customer for utility line trimming) and "running slips" (when the customer initiated contact with Defendant for custom trimming).  *Id.* at 23-25, 27-36.

Defendant compensated Plaintiff in the form of an hourly pay rate, overtime pay for hours worked in excess of forty hours in any given work week, and eligibility to participate in Defendant's health insurance and other benefit programs, including the Wright Service Corp. Employee Stock Ownership Plan (the "Plan").  *Ex. A, Aff. of Schuster* [#115-1] ¶ 4. The Plan is governed by ERISA.  *See id.*; *Ex. C, Summary Plan Description* [#115-3] ¶ 19. Pursuant to the Plan, Defendant pays into the Plan but is not directly liable for making any distributions under the Plan; the Plan Administrator is vested with discretionary authority to make determinations under the Plan, including those related to distributions.  *Ex. A, Aff. of Schuster* [#115-1] ¶ 4; *Ex. C, Summary Plan Description* [#115-3] ¶ 4; *Ex. D, Employee Stock Ownership Plan & Trust Agreement* [#115-4] §§ 7.02, 9.04.

Throughout her employment with Defendant, Plaintiff was aware that a significant

---

[4] For depositions only, the Court cites to the page number of the deposition.  For all other citations, the Court cites to the page or paragraph number of the docket entry.

portion of Defendant's work came from its customer Xcel Energy ("Xcel"), a major United States electric and natural gas company, which serves over 150 different communities in Colorado. *Ex. A, Aff. of Schuster* [#115-1] ¶ 5; *Ex. B, Depo. of Plaintiff* [#115-2] at 23, 26-27, 145. Plaintiff knew that it was important for her to perform well to avoid a competitor taking Xcel's business from Defendant. *Ex. B, Depo. of Plaintiff* [#115-2] at 145. In performing her duties for Defendant, Plaintiff worked closely with an Xcel supervisor, who oversaw Defendant's trimming services around Xcel's utility lines. *Id.* at 97.

Starting in approximately 2007, Xcel supervisor Adam Pena ("Pena") assumed the role of monitoring Defendant's work and became Plaintiff's point of contact with Xcel. *Id.* at 98. In late April 2009, Mr. Pena raised concerns about Plaintiff's job performance. At that time, Mr. Pena sent an email to Defendant in which he attributed homeowner complaints to Plaintiff's failure to properly notify homeowners of Defendant's trimming activities. *Ex. A, Aff. of Schuster* [#115-1] ¶ 6; *Ex. E, E-mail from Pena* [#115-6]. On June 9, 2009, Mr. Pena sent an email requesting that Defendant have someone other than Plaintiff seek approval to trim a homeowner's trees, stating, "[Plaintiff] is not very good[,] can you talk to this guy[?]" *Ex. A, Aff. of Schuster* [#115-1] ¶ 7; *Ex. F, E-mail from Pena* [#115-7].

On June 30, 2009, Mr. Pena again took issue with Plaintiff's performance and sent the following email to Defendant:

> I hate bringing up the same issue, and I know this is something you don't want to hear, but it appears that we have a weak link in our system. We have spoken many times before about [Plaintiff] and how she has not performed to the level that we expect in the past. This year does not seem to be very different, everything from paperwork errors to customer communications. The email below is just another example of the issues I have with the way this [Job Planner] is communicating with customers . . . We have improved

4

dramatically from three years ago, but I still see this consistent problem with this JP . . . I know that [Defendant] has provided more training to this JP, but it does not seem to be getting through . . . We cannot have someone out there confusing customers with inaccurate statements about federal law . . . What does [Defendant] intend to do about this situation?

*Ex. A, Aff. of Schuster* [#115-1] ¶ 8; *Ex. G, E-mail from Pena* [#115-8].  Notably, prior to the situation referenced in Mr. Pena's email, Defendant had specifically instructed Plaintiff – and she fully understood – that it was improper to tell homeowners that tree trimming was required by federal law.  *Ex. A, Aff. of Schuster* [#115-1] ¶ 8; *Ex. B, Depo. of Plaintiff* [#115-2] at 146-48.

On July 3, 2009, Mr. Pena forwarded yet another email concerning Plaintiff in which the president of a homeowner's association ("HOA") complained that Plaintiff failed to properly provide notice and obtain authorization to trim trees on the HOA's parkway, despite Plaintiff having been provided with the appropriate contact information to enable her to do so.  *Ex. A, Aff. of Schuster* [#115-1] ¶ 9; *Ex. H, E-mail from Pena* [#115-9].  The HOA president also reported that Plaintiff "stood [him] up" after promising to immediately meet with him to discuss the work Defendant was performing.  *Ex. H, E-mail from Pena* [#115-9].

As a result of the issues raised by Mr. Pena, and the fact that it did not appear Plaintiff could perform at the level Mr. Pena expected, Defendant decided that it could not further jeopardize its longstanding relationship with its largest customer.  *Ex. A, Aff. of Schuster* [#115-1] ¶ 10.  There was no other position into which Plaintiff could be transferred due to the significant proportion of Defendant's business devoted to Xcel.  *Id.*  Accordingly, Defendant terminated Plaintiff's employment effective July 6, 2009.  *Id.*  After the termination of Plaintiff's employment, Mr. Pena sent another email in which he again

criticized Plaintiff's performance:

> I do believe that had we properly notified this customer and followed the correct steps this whole issue could have been avoided. This notification issue/problem was caused by poor job planning on [Plaintiff's] part[. Please] ensure that all of the JP's are following the proper notification processes as to avoid this type of problem in the future.

*Id.* ¶ 11; *Ex. I, E-mail from Pena* [#115-10].  At her deposition, Plaintiff conceded multiple times that Defendant terminated her employment as a result of the emails sent by Mr. Pena and the issues he had with her performance.  *Ex. B, Depo. of Plaintiff* [#115-2] at 422, 431, 462.   Neither Mr. Pena nor Xcel ever expressed similar concerns about any male Job Planner which necessitated termination of employment.  *Ex. A, Aff. of Schuster* [#117-1] ¶ 12.

Under the Plan, Plaintiff is eligible to obtain her vested account balance five years after her separation-of-employment date.  *Ex. C, Summary Plan Description* [#115-3] ¶¶ 7-10; *Ex. D, Employee Stock Ownership Plan & Trust Agreement* [#115-4] § 6.01(A)(2). Despite the requirements of the Plan, Plaintiff has not submitted a written complaint or appeal concerning any issues in connection with the Plan.  *Ex. B, Depo. of Plaintiff* [#115-2] at 293-94; *Ex. C, Summary Plan Description* [#115-3] ¶ 17; *Ex. D, Employee Stock Ownership Plan & Trust Agreement* [#115-4] § 8.05.

In connection with her claims, Plaintiff seeks back pay, wages, exemplary and punitive damages, consequential damages, emotional distress, humiliation, mental anguish, loss of reputation, costs, attorneys' fees, special damages, liquidated damages, statutory damages, and loss of future earnings.  *Am. Compl.* [#13] at 25.

## II.  Standard of Review

### A.      Summary Judgment

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

7

Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

B.    **Plaintiff's Status as a *Pro Se* Litigant**

Before proceeding to the parties' arguments, a word regarding the filings in this matter is required. Throughout the course of this litigation, the Court has attempted to decipher Plaintiff's prolix filings. *See, e.g.*, #26, #28, #29, #30, #32, #33, #40, #41, #43, #46, #50, #53, #54, #55, #59, #60, #63, #64, #65, #68, #69, #70, #74, #76, #77, #78, #79, #81, #86, #87, #94, #96, #98, #101, #112. The Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, many, if not most, of Plaintiff's filings have been "verbose, redundant, ungrammatical, [and] unintelligible." *See* D.C.COLO.LCivR 7.1H. The filings at issue in this Recommendation fall into the same category.

The Court may not be a *pro se* litigant's advocate, nor should it "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on her behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). However, the Court has painstakingly attempted to guide this *pro se* Plaintiff through the federal legal system through written orders and at hearings, *see, e.g.*, #22, #36, #42, #45, #52, #61, #62, #67, #73, #85, #90, #100, #105, #114, because a *pro*

8

*se* litigant must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). Plaintiff has repeatedly failed to adhere to the Federal Rules of Civil Procedure, to the Local Rules, to the District Judge's Civil Practice Standards, and to the Court's Orders and other directives. The present Motions are no exception, even though the Court has provided Plaintiff with ample opportunity to withdraw non-compliant or incoherent documents and file proper versions.

Throughout this litigation, Plaintiff has repeatedly submitted hundreds of pages of written briefs and documents which she asserts support her version of the case. *See, e.g.*, [#129] (stricken filing, in which Plaintiff asserts that she needs a jury trial lasting at least six months to a year to present each exhibit and to question each person involved with each exhibit). However, Plaintiff rarely refers to exhibits or filings by name and never with a page number citation, as she is required to do by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ."). The Court is not required to sort through the stacks of unorganized documents submitted by Plaintiff since the instigation of this litigation. *See* Fed. R. Civ. P. 56(c)(3) (stating that the Court "need consider only the cited materials"). The Court may, and has, considered other materials in the record. *See id.* However, the Court may not and has not done Plaintiff's job for her by organizing her submissions and researching every document to find support for the statements made in her briefing.

Additionally, before proceeding to the analysis of Plaintiff's claims, the Court notes

one point of confusion in the claims asserted by Plaintiff.  In part, Plaintiff contends that Defendant discriminated against her on the basis of her gender and age in violation of Title VII and the ADEA.  *See Am. Compl.* [#13] ¶¶ 119-150.  Plaintiff also asserts a claim for "disparate treatment."  *Id.* ¶ 151-158.  However, "disparate treatment" is not a cognizable legal claim; it is merely an additional theory of proof that a plaintiff may use to show that she was treated less favorably than other similarly situated employees.  *See, e.g.*, *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).  For the purpose of an employment discrimination claim, a showing of disparate treatment is not necessary to establish a prima facie case.  *See Sorbo v. United Parcel Service*, 432 F.3d 1169, 1173 (10th Cir. 2005).  The broader requirement of showing circumstances giving rise to an inference of discrimination "may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably," but such proof is just one means via which such circumstances can be proven.  *Id.*  Thus, "disparate treatment" may be part of an employment discrimination claim, but it is not a basis for an independent legal claim.  The Court appropriately disregards the legal labels applied by a *pro se* plaintiff when those labels serve to obfuscate the nature of the legal claims asserted.  *See Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  The Court therefore merges Plaintiff's Claim Five for disparate treatment with Plaintiff's Claim Three (age discrimination) and Claim Four (gender discrimination).

### III.  Analysis

Defendant moves for summary judgment on all of Plaintiff's claims.  *See Def.'s*

Motion [#115].   Plaintiff's Motion, although difficult to decipher, also appears to seek summary judgment on all claims.  *See Pl.'s Motion* [#81].

## A.    Claims Three, Four, and Eight: Subject Matter Jurisdiction

Plaintiff asserts a claim for retaliation pursuant to Title VII (Claim Eight).  *Am. Compl.* [#13] ¶¶ 178-183.  Plaintiff also asserts claims for age discrimination pursuant to the ADEA (Claim Three) and gender discrimination pursuant to Title VII (Claim Four), in part based on discriminatory failure to promote her to the position of Operations Manager.[5] *Id.* ¶¶ 125-126.  Defendant asserts that Plaintiff has failed to exhaust her administrative remedies on these claims.  *Def.'s Motion* [#115] at 17-18.  Although Defendants couch these exhaustion arguments in the context of their summary judgment discussion, they essentially seek a ruling on whether the Court has subject matter jurisdiction over these claims in this action. The Court therefore discusses these arguments first.  *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

The Court of Appeals for the Tenth Circuit has held that "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII—not merely a condition precedent to suit."  *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).   The Court of Appeals has also established that "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under the ADEA."  *Id.*  "The failure to file an administrative Title VII [or ADEA] claim before

---

[5]  Plaintiff also makes these claims with respect to the position of General Foreman, which the Court addresses below.

11

bringing suit is jurisdictionally fatal and requires dismissal pursuant to Fed. R. Civ. P. 12(b)(1)." *Underwood v. Geo Group, Inc.*, No. 10-cv-00306-LTB-KLM, 2010 WL 2653316, at *2 (D. Colo. June 30, 2010) (citing *Shikle*s, 426 F.3d at 1317).  A plaintiff who invokes the court's subject matter jurisdiction "must allege in [her] pleadings the facts essential to show jurisdiction" and, if challenged, must support those allegations by a preponderance of the evidence.  *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (quotation omitted); *see United States v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). Thus, in short, an employment-discrimination plaintiff must demonstrate exhaustion. *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002); *see Greenlee v. U.S. Postal Serv.*, 247 F. App'x 953, 955 (10th Cir. 2007) (noting exhaustion pleading requirement in connection with Title VII claim).

Addressing Plaintiff's claim for failure to promote to Operations Manager first, Defendant appears to uniformly refer to the position as a "Project Manager" without an explicit assertion that it is the same position as an "Operations Manager."[6]  However, Defendant argues that the only position for which Plaintiff exhausted her administrative remedies for a failure-to-promote claim is that of General Foreman.  *Def.'s Response* [#117] at 16 n.3.  In support, Defendant provides Plaintiff's EEOC Charge of Discrimination. *Ex. L, Charge of Discrimination* [#115-13].  Plaintiff's EEOC Charge of Discrimination only states that she was denied the position of General Foreman; it does not state that she applied for, attempted to apply for, or was denied any other promotion.  *Ex. L, Charge of Discrimination* [#115-13].  Accordingly, Defendant is correct that any failure-to-promote

---

[6] Plaintiff at least once refers to the position in her briefings as "Operation/project manager." *Pl.'s Motion* [#81] at 4.

claim as to any position except for General Foreman is unexhausted, and the Court lacks subject matter jurisdiction over any such claim.

Similarly, Plaintiff has failed to demonstrate that she exhausted administrative remedies regarding her retaliation claim. Because "exhaustion of administrative remedies is a jurisdictional prerequisite to a Title VII suit," and there is no mention of retaliatory action in her EEOC Charge of Discrimination, Plaintiff's retaliation claim fails for lack of jurisdiction. *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1101 (10th Cir. 2011).

"[B]ecause the Court lacks jurisdiction over these claims, it cannot grant summary judgment on them; rather, the Court merely dismisses these claims [without prejudice] for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." *Castillo v. United Parcel Serv.*, No. 06-cv-00668-MSK-KLM, 2008 WL 486082, at *2 (D. Colo. Feb. 19, 2008); *see Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim"). Accordingly, the Court **recommends** that Plaintiff's claim for retaliation pursuant to Title VII (Claim Eight) and the portions of Plaintiff's claims for age discrimination pursuant to the ADEA (Claim Three) and gender discrimination pursuant to Title VII (Claim Four) based on discriminatory failure to promote to the position of Operations and/or Project Manager be **DISMISSED without prejudice**.

## B.     Claims Three and Four: Gender and Age Discrimination

The Court next turns to the remainder of Plaintiff's Claim Three and Claim Four. In

13

these claims, Plaintiff contends that Defendant discriminated against her on the basis of her gender and age in violation of Title VII and the ADEA. *See Am. Compl.* [#13] ¶¶ 119-150.

### 1.    Direct Evidence

Plaintiff asserts that there is both direct and circumstantial evidence of gender and age discrimination. The Court first examines any alleged direct evidence of discriminatory intent. *See Furr v. AT&T Techs., Inc.*, 824 F.2d 1537, 1549 (10th Cir. 1987) (stating that the Court need not address the shifting allocation of burdens of proof pursuant to the *McDonnell Douglas* framework if direct evidence of the employer's discrimination exists). "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (brackets omitted) (internal quotation marks omitted). This evidence must "speak directly to the issue of discriminatory intent" as well as "relate to the specific employment decision in question." *Eslinger v. U.S. Cent. Credit Union*, 866 F. Supp. 491, 495 (D. Kan. 1994) (citations omitted).

Purportedly as direct evidence of gender discrimination, Plaintiff asserts that in May 2007 her supervisor, Tim Hanson ("Hanson"), commented to Plaintiff and others that "women shouldn't have the right to vote" and that "women are only good for having kids, but they are not good enough to raise them." *Am. Compl.* [#13] ¶ 100. Further, purportedly as direct evidence of age discrimination, Plaintiff asserts that in August 2007 Mr. Hanson stated that he "wanted to get rid of all the old people," and that this comment was directed toward Plaintiff. *Am. Compl.* [#13] ¶¶ 101-102. These are the only explicitly discriminatory comments that Plaintiff asserts were made by any employee of Defendant.

14

While Mr. Hanson's statements may be considered as some evidence of discriminatory intent, Plaintiff has not demonstrated that Mr. Hanson's alleged personal bias had any bearing on the decisions not to promote or train Plaintiff and to terminate Plaintiff's employment. For example, although Mr. Hanson's age-related comment made in August 2007 may be construed to mean that he intended to seek the firing of older employees, this comment occurred nearly two years before Plaintiff's termination and thus is far too remote to constitute direct evidence of age discrimination in connection with Plaintiff's termination in July 2009. Thus, these statements simply may not be deemed direct evidence of discrimination but are, rather, circumstantial evidence from which a jury may infer discriminatory intent. *See Eslinger*, 866 F. Supp. at 495.

As succinctly explained in *Eslinger v. U.S. Central Credit Union*, "the Tenth Circuit has found, in analogous circumstances, that evidence of personal bias on the part of an individual involved in the making of the employment decision is not direct evidence of discrimination." 866 F. Supp. at 495-96 (citing *Ramsey v. City and County of Denver*, 907 F.2d 1004, 1008 (10th Cir.1990)). In *Ramsey*, the plaintiff's supervisor made comments indicating his belief that certain jobs were more suitable for women than others. *Ramsey*, 907 F.2d at 1008. The plaintiff argued that these comments were direct evidence of discrimination. *Id.* "The Tenth Circuit found that for such evidence to constitute direct evidence of discriminatory conduct, it would need to show, not simply personal bias, but that the employer acted on his or her discriminatory beliefs." *Eslinger*, 866 F. Supp. at 496 (citing *Ramsey*, 907 F.2d at 1008). The court found that the comments, on their own, did not indicate that the plaintiff's supervisor acted on his discriminatory beliefs. *Ramsey*, 907 F.2d at 1008. Thus, the discriminatory statements were not direct evidence, but rather

15

were circumstantial evidence, "proof of certain facts and circumstances . . . from which a jury may, under certain conditions, infer other connecting facts which usually and reasonably follow according to the common experiences of mankind." *Id.* (citing, in part, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) ("Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision.  The plaintiff must show that the employer actually relied on her gender in making its decision.  In making this showing, stereotyped remarks can certainly be evidence that gender played a part.")).

Similar to the evidence presented in *Eslinger* and *Ramsey*, Mr. Hanson's alleged statements could indicate personal bias, but they do not mandate the conclusion that he acted on his beliefs regarding any employment decision made about Plaintiff.  *See Eslinger*, 866 F. Supp. at 496.  "Thus, [Mr. Hanson's statements] constitute circumstantial and indirect evidence from which a jury may, if it credits such evidence, infer that gender played a part in the employment decision." *Id.*  Accordingly, absent direct evidence of gender or age discrimination, the burden-shifting analysis of *McDonnell Douglas* is applicable to Plaintiff's claim that she was terminated based on her gender and/or age.  *See Robinson v. Dean Foods Co.*, 654 F. Supp. 2d 1268, 1275-76 (D. Colo. 2009).

### 2.    Circumstantial Evidence

Pursuant to *McDonnell Douglas*, if Plaintiff establishes a prima facie case of gender discrimination, Defendant must then articulate a legitimate, nondiscriminatory reason for its employment decision.  If Defendant does so, then Plaintiff then must provide evidence from which a jury may infer that Defendant's proffered reason is pretextual.  *See Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1249 (10th Cir. 2006) (Title VII); *McKnight v.*

*Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (ADEA).

### a.    Prima Facie Case

Plaintiff asserts that Defendant discriminatorily failed to train her, failed to promote her, and terminated her on the basis of her gender and/or age.

### i.    Failure to Train

Plaintiff asserts that Defendant failed to train her to climb, trim, and remove trees due to gender discrimination.[7]  *Pl.'s Motion* [#81] at 1; *Am. Compl.* [#13] ¶¶ 30-34.  Title VII prohibits an employer who controls on-the-job training, retraining, or other training programs from discriminating against an individual because of her gender.  42 U.S.C. § 2000e-2(d); *see Anderson v. Boeing Co.*, No. 02-CV-196, 2006 WL 2990383, at *18 (N.D. Okla. Oct. 18, 2006).  To establish a prima facie case of discrimination for failure to train, Plaintiff must show that: (1) she is a member of a protected group; (2) Defendant provided training to its employees; (3) Plaintiff was eligible for training; and (4) she was not provided training under circumstances giving rise to an inference of discrimination, *i.e.*, that she was denied training given to other similarly-situated employees who were not members of the protected group.  *See Singh v. Town of Mount Pleasant*, 172 Fed. App'x 675, 682 (7th Cir. 2006) (citing *Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir. 1998)).

It is undisputed that, in the context of her gender discrimination claim, Plaintiff, a female, is a member of a protected class.  *Am. Compl.* [#13] ¶ 10.  It is also undisputed that Defendant provided training to its employees.  *Id.* ¶ 33; *Aff. of Schuster* [#117-1] ¶ 2.  There also appears to be no dispute regarding whether Plaintiff was eligible for training, as

---

[7]  Plaintiff does not assert that Defendant's alleged failure to train was based on her age. *See Am. Compl.* [#13] ¶¶ 119-135.

Defendant offered her the opportunity to train as a Climber in 2009. *Aff. of Schuster* [#117-1] ¶ 2. With respect to the fourth element of Plaintiff's prima facie case, she asserts that her male colleagues were taught to climb trees and she specifically names her co-worker Mark Denell ("Denell") as one male colleague who was taught to climb. *Am. Compl.* [#13] ¶ 33. Defendant does not contest that Mr. Denell was similarly situated to Plaintiff or that he was taught to climb. Accordingly, Plaintiff has established a prima facie case of gender discrimination based on failure to train.

Because Plaintiff has established a prima facie case of gender discrimination, the next step in the *McDonnell Douglas* analysis is to determine whether Defendant has stated a legitimate nondiscriminatory reason for not training Plaintiff to climb, trim, and remove trees. *See Olson v. Qwest Communications Corp.*, No. 08-cv-01796-REB-KLM, 2009 WL 3530375, at *3 (D. Colo. Oct. 23, 2009). "The defendant need not rebut the evidence established under the first step; the defendant is required to rebut the inference that [it] acted out of discriminatory animus." *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 n.5 (10th Cir. 1992). "However, to rebut this inference the defendant need only articulate a facially nondiscriminatory reason for the [decision]." *Id.* Here, Defendant asserts that it provided Plaintiff with the opportunity to be trained as a Climber in 2009, but that Plaintiff failed to take any steps to follow-up on the opportunity, which would have resulted in a pay cut. *Aff. of Schuster* [#117-1] ¶ 2. The Court finds that this constitutes a facially legitimate nondiscriminatory reason for Defendant's failure to train Plaintiff to climb, trim, and remove trees.

Because Defendant has stated a  facially legitimate nondiscriminatory reason, the Court must next determine whether Plaintiff has come forward with evidence to support a

conclusion that Defendant's stated reason is a pretext for discrimination.  In order to do so, Plaintiff must provide evidence that would permit a reasonable trier of fact to conclude that Defendant's nondiscriminatory reason for not training Defendant is unworthy of credence and was, instead, a pretext for gender discrimination. If such evidence exists, then a reasonable trier of fact may infer that Defendant did not act for the asserted nondiscriminatory reason.

"Pretext may be demonstrated by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morales v. McKesson Health Solutions, LLC*, 136 Fed. App'x 115, 118 (10th Cir. 2005) (citing *Morgan v. Hill, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). "Recognized categories of proof of pretext include proving the articulated reason is not the true reason, *York v. AT & T*, 95 F.3d 948, 954 (10th Cir. 1996); proving the plaintiff was subjected to different discipline or terminated differently than [sic] other employees who committed the same or more serious offenses, *McDonnell Douglas*, 411 U.S. at 804; *Elmore v. Capstan, Inc.*, 58 F.3d 525 (10th Cir. 1995); *David v. City & County of Denver*, 101 F.3d 1344 (10th Cir. 1996); and the articulated reason is unworthy of credence, *Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995)." *Olson*, 2009 WL 3530375, at *4.

To demonstrate that Defendant's non-discriminatory reason was a pretext for gender discrimination, Plaintiff asserts that "in response to her requests to learn how to climb, Tim Hanson would overwhelm her with newly assigned work, such as an increase in the number of crews for which Plaintiff was responsible." *Am. Compl.* [#13] ¶ 31.  Thus,

Plaintiff asserts that Defendant's offer to train was an empty offer, because Defendant subsequently deliberately placed roadblocks which prevented Plaintiff from taking advantage of the offer to train her as a Climber. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d1160, 1172 (10th Cir. 2007) (stating that the plaintiff need only provide some evidence that would allow a reasonable fact finder to disbelieve the defendant's proffered explanation). Although Defendant disputes it, the Court finds that the evidence provided by Plaintiff could support a finding by a reasonable fact finder that Defendant's nondiscriminatory reason for not training Plaintiff to climb, trim, and remove trees is unworthy of credence and was instead a pretext for gender discrimination. Due to this genuine issue of material fact, neither party is entitled to entry of summary judgment on Plaintiff's failure-to-train gender discrimination claim.

### ii.    Failure to Promote

Plaintiff asserts that Defendant failed to promote her to the position of General Foreman due to gender and age discrimination. *Am. Compl.* [#13] ¶¶ 124-128, 140-145. To establish a prima facie case of discrimination based on failure to promote, Plaintiff must establish that: (1) she was a member of a protected class; (2) she applied for and was qualified for an available position; (3) she was rejected; and (4) Defendant promoted other persons with her qualifications who were not members of the protected class, or the promotion remained open. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1238 (10th Cir. 2002). It is undisputed that Plaintiff is a member of a protected class (female) and that she was over the age of forty at all times relevant to this dispute. *Am. Compl.* [#13] ¶¶ 9-10.

Turning to the second element of the prima facie case, Plaintiff asserts that she was qualified for the position of General Foreman but was told that she could not apply for it.

20

*Id.* ¶¶ 125-126. Defendant argues that Plaintiff lacked the qualifications for the promotion because she did not have an herbicide applicator or operator's certification and license and because she lacked three years experience working on a tree trimming or clearing crew. *Aff. of Schuster* [#117-1] ¶ 3. Plaintiff asserts that Defendant refused to teach her how to climb, trim, and remove trees throughout her nine years of employment. *Pl.'s Motion* [#81] at 1. However, she does not contest that she did not have an herbicide applicator or operator's certification and license. The General Foreman job's description provided by Defendant clearly states that a successful applicant "must have and maintain" an herbicide applicator or operator's certification and license. *Ex. J, General Foreman* [#115-11] at 1. Therefore, although Plaintiff conclusorily asserts that she was qualified for the position, it is undisputed that she was not qualified for the General Foreman position because she did not have her herbicide applicator or operator's certification and license. *Am. Compl.* [#13] ¶ 125.

Plaintiff also asserts that she must have been qualified for the General Foreman position because "she often performed General Foreman duties" and because "she had served as acting General Foreman on numerous occasions." *Id.* ¶ 43. However, "[t]he mere fact that Plaintiff temporarily filled in for the position she sought does not raise a genuine issue of fact as to her qualification for the position." *Def.'s Motion* [#115] at 13 (citing *E.E.O.C. v. Wiltel, Inc.*, 81 F.3d 1508, 1515-16 (10th Cir. 1996)). Further, Defendant asserts that the person hired for the position, Jaime Flores, was employed by Defendant longer than Plaintiff, had the qualifications for the position, and had not been the subject of complaints about his performance by Defendant's largest customer, Xcel. *Aff. of Schuster* [#117-1] ¶ 4. Absent some evidentiary basis on which a reasonable fact finder

could conclude that Plaintiff met the qualifications for the General Foreman position, the Court cannot conclude that Plaintiff has established a prima facie case of gender or age discrimination based on failure to promote.

### iii.   Termination of Employment

To establish a prima facie case of employment discrimination when the plaintiff's employment was terminated allegedly on the basis of gender and/or age, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified and satisfactorily performing her job; and (3) she was terminated under circumstances giving rise to an inference of discrimination.  *Salguero v. City Of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).   For purposes of the parties' summary judgment motions, Defendant assumes *arguendo* that Plaintiff can satisfy the elements of her discriminatory discharge claim.  *Def.'s Motion* [#115] at 14; *Def.'s Response* [#117] at 17.  However, before turning to Defendant's argument that Plaintiff cannot establish that its legitimate nondiscriminatory reason for discharging her was pretext, the Court makes a few observations.  First, as previously noted, it is undisputed that Plaintiff is a member of a protected class (female) and that she was over the age of forty at all times relevant to this dispute.  *Am. Compl.* [#13] ¶¶ 9-10.  Second, the parties do not dispute whether Plaintiff was qualified for the position of Job Planner, but they do dispute whether she was satisfactorily performing her job.  Plaintiff asserts that prior to July 6, 2011, the date she was discharged, she "had never received any notice that she [had] been performing poorly or that she was otherwise not performing in a satisfactory manner."  *Am. Compl.* [#13] ¶ 94.  Plaintiff had never been "written up" and she had no disciplinary actions against her.  *Id.* ¶ 95.  Taken in a light most favorable to Plaintiff, *see Adickes*, 398 U.S. at 157; *Panis*, 60 F.3d at 1490 (citing *Celotex*,

477 U.S. at 324), this evidence is sufficient to meet the second element of Plaintiff's prima facie case, *i.e.*, that she was satisfactorily performing her job leading up to her termination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) (stating that the Court first looks to the evidence provided by the plaintiff employee to determine whether she has established her prima facie case).

Turning to Defendant's asserted facially legitimate reason for terminating Plaintiff, the Court has already recited the facts surrounding Plaintiff's discharge. In short, Mr. Pena, a supervisor for Xcel, Defendant's largest customer, complained to Defendant about Plaintiff's job performance in late April 2009, on June 9, 2009, on June 30, 2009, and on July 3, 2009, all of which complaints concerned Plaintiff's interaction and communication with homeowners. *See Ex. A, Aff. of Schuster* [#115-1] ¶¶ 6-9. Defendant asserts that, as a result of the issues raised by Mr. Pena, and the fact that it did not appear Plaintiff could perform at the level Mr. Pena expected, Defendant decided that it could not further jeopardize its longstanding relationship with its largest customer. *Ex. A, Aff. of Schuster* [#115-1] ¶ 10. Defendant further asserts that there was no other position into which Plaintiff could be transferred due to the significant proportion of Defendant's business devoted to Xcel. *Id.* Accordingly, Defendant terminated Plaintiff's employment effective July 6, 2009. *Id.* Inadequate job performance is a legitimate nondiscriminatory reason for an employee's termination. *See Robinson v. Dean Foods Co.*, 654 F. Supp. 2d 1268, 1281-82 (D. Colo. 2009).

The Court turns to Plaintiff's proffered evidence of pretext. *See Am. Compl.* [#13] ¶ 157. In this case, she asserts that she was subjected to different discipline or terminated differently from other employees who committed the same or more serious offenses. *See,*

23

*e.g.*, *McDonnell Douglas*, 411 U.S. at 804; *Elmore*, 58 F.3d; *David*, 101 F.3d.  However, Plaintiff has not identified any other employee who committed the same or another more serious offense and who was subjected to different discipline or termination circumstances. *See Sorbo*, 432 F.3d at 1173 (stating that the broader requirement of showing circumstances giving rise to an inference of discrimination "may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably").  The Court therefore finds that because Plaintiff has failed to provide evidence tending to establish that Defendant's proffered nondiscriminatory reason was pretext for her termination, there is no genuine issue of material fact regarding Plaintiff's claim of gender or age discrimination in connection with her termination.

Accordingly, in sum, the Court concludes that summary judgment should enter, in part, in favor of Defendant on Plaintiff's age discrimination (Claim Three) and gender discrimination (Claim Four) claims, as follows.  First, the Court **recommends** that the parties' Motions for Summary Judgment on Plaintiff's failure-to-train claim should be **denied**.  Second, the Court **recommends** that Defendant's Motion for Summary Judgment on Plaintiff's failure-to-promote claim and discriminatory termination claim should be **granted**.

## C.    Claim One: Hostile Work Environment

Plaintiff asserts a claim for hostile work environment pursuant to Title VII and the ADEA on the basis of her sex and age .  *See Am. Compl.* [#13] ¶¶ 99-110.

To prove a claim of hostile work environment as a matter of law, "a plaintiff must show that a rational jury could find that the workplace [was] permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (citation omitted). All of the circumstances of the employment must be considered, including: 1) the frequency of the discriminatory conduct; 2) its severity; 3) whether it was physically threatening or humiliating, or a mere offensive utterance; and 4) whether it unreasonably interfered with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The plaintiff's working environment must be both subjectively and objectively abusive or hostile. *Id.*; *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998).

Defendant's conduct, as asserted by Plaintiff, falls far short of demonstrating pervasive or severe workplace harassment. Plaintiff asserts seven pieces of evidence to support her claim: 1) that, on an unspecified date, she lost her International Society of Arborculture certification "because Defendant refused to provide her paperwork showing satisfactory 'independent units' necessary for the corresponding safety classes;" 2) that in May 2007, Mr. Hanson commented to Plaintiff and others that "women shouldn't have the right to vote" and that "women are only good for having kids, but they are not good enough to raise them;" 3) that in August 2007 Mr. Hanson stated that he "wanted to get rid of all the old people," and that this comment was directed toward Plaintiff; 4) that in October 2007 Plaintiff was denied a cell phone with blue tooth capabilities by Mr. Hanson and another supervisor, Kirk Schuster, even though a male counterpart in a similar position, Mr. Denell, had received one;[8] 5) that Plaintiff was denied medical treatment in December 2008 when

---

[8] Plaintiff was provided with a cell phone with blue tooth capabilities in or around October 2008. *Am. Compl.* [#13] ¶ 39.

she sustained a knee injury on the job, and that Mr. Hanson, her supervisor, refused to provide her with time off, thus forcing her to use vacation days to see a physician and heal; 6) that in April 2009 Plaintiff was refused repair maintenance on her company vehicle when it sustained a tire puncture and was leaking air, thus forcing her to continually refill the tire for weeks, even though "her male counterparts were allowed to have tires immediately fixed on the company vehicles that they drove;" 7) that Plaintiff was again denied medical treatment in May 2009 in connection with a vehicle accident that occurred on the job, and that Jaime Florez, another of Plaintiff's supervisors, refused to provide her with time off, thus forcing her to use vacation days to see a physician and heal. *Id.* ¶¶ 100-108.

The first, fifth, and seventh pieces of evidence cited by Plaintiff do not relate specifically to her gender or age. Further, Plaintiff alleges only one comment relating to her gender and only one comment relating to her age over the course of her long employment with Defendant. "[C]ourts judging hostility should filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of age-related jokes, and occasional teasing . . . to ensure that Congressional enactments such as the ADEA do not become trivialized as a civility code." *MacKenzie*, 414 F.3d at 1280 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Courts should particularly "filter out offhand comments, and isolated incidents," unless they are "extremely serious." *MacKenzie*, 414 F.3d at 1280; *see also McPherson v. HCA–HealthOne, LLC*, 202 F. Supp. 2d 1156, 1172 (D. Colo. 2002) (stating that, when evaluating whether the allegedly harassing circumstances of a workplace are sufficiently severe or pervasive, "an isolated incident of harassment by a coworker will rarely (if ever) give rise to a reasonable fear that . . . harassment has become a permanent feature of the employment relationship."). The second and third pieces of

evidence fall into this category and should therefore be filtered out of the analysis.

With respect to the cell phone with blue tooth capabilities, Plaintiff has failed to allege how this affected a term, condition, or privilege of employment, *i.e.*, how not having a blue-tooth capable cell phone affected her job or, at a minimum, inconvenienced her. *See Brooks v. City of San Mateo*, 229 F.3d 917, 927 (9th Cir. 2000)  (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)).   Finally, although having to refill the air in her vehicle's tire over the course of several weeks before her employer fixed the problem was undoubtedly an inconvenience, a hostile work environment claim must be based on evidence of more than mere inconvenience.  *Dick v. Phone Directories Co.*, 397 F.3d 1256 (10th Cir. 2005); *see also Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004) (same in sex discrimination claim); *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527 (10th Cir. 1998) (same in age discrimination claim).  The Court also notes that this last incident took place more than a year and a half after any other alleged action by Defendant that could be connected to Plaintiff's gender or age.

Thus, the Court finds that these alleged incidents, spread over the course of several years, are insufficient to demonstrate that the alleged "harassment affect[ed] a term, condition, or privilege of employment within the meaning of Title VII" or the ADEA. Plaintiff's proffered evidence does not create a triable issue of fact on the existence of a gender- or age-based hostile work environment.  *Brooks*, 229 F.3d at 927  (citing *Vinson*, 477 U.S. at 67).  *See also Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990 (8th Cir. 2003) (single incident of a co-worker's squeezing of employee's buttocks, and subsequent "joke" about such conduct, did not rise to level of severe or pervasive conduct); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 528-29, 534 (7th Cir. 1993) (limited unwelcome sexual

advances by a supervisor including rubbing and kissing was not pervasive harassment); *Flowers v. Fed. Express Corp.*, No. 06-cv-01010-WYD-KLM, 2008 WL 185699 (D. Colo. Jan. 18, 2008) (incidents of one employee pressing up against the backside and squeezing the thigh of another employee did not constitute a hostile work environment).

Therefore, the Court concludes that Plaintiff has not demonstrated that there is a genuine issue of material fact in connection with her hostile work environment claim. Accordingly, the Court **recommends** that summary judgment enter in favor of Defendant on Plaintiff's hostile work environment claim.

## D.    Claim Six: EPA

Plaintiff claims that her male counterparts were paid more than she was paid in violation of the EPA.  *See Am. Compl.* [#13] ¶¶ 159-169.  Defendant asserts that Plaintiff has provided no evidence that her male counterparts were paid more.  *Def.'s Motion* [#115] at 15.

In part, the EPA provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1).  The Court analyzes an EPA claim in two steps:

First, the plaintiff must establish a prima facie case of discrimination by demonstrating that employees of the opposite sex were paid differently for

28

> performing substantially equal work. If the plaintiff meets her prima facie case, the burden of persuasion then shifts to the defendant to prove that the wage disparity was justified by one of four permissible reasons, including disparity based on any factor other than sex.

*Lewis v. D.R. Horton, Inc.*, 375 Fed. App'x 818, 823 (10th Cir. 2010) (internal quotations and citations omitted). To establish a prima facie case pursuant to the EPA, Plaintiff must show that: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997) (internal quotations and citations omitted).

The "equal work" requirement of the EPA is not construed broadly; failure to furnish equal pay for "comparable work" or "like jobs" is not actionable. *See id.* "Rather, in order to prevail in such an EPA action, the jobs must be 'substantially equal' in terms of 'skill,' 'effort,' 'responsibility,' and 'working conditions.'" *Id.* (internal quotations and citation omitted). In addition, to satisfy her prima facie showing, a plaintiff must produce evidence that she performed substantially all of the duties of a higher-paid co-worker and not just some of the job duties. *See Lewis*, 375 Fed. App'x at 823.

Plaintiff asserts that she was paid less than at least two of her male counterparts in similar or equivalent positions: Mr. Denell and Mario Torrez. *Am. Compl.* [#13] ¶ 160. Plaintiff does not offer any specifics regarding her wages or their wages during any specific time period. *See id.* ¶¶ 159-169. The only such information before the Court was provided by Defendant. *See Aff. of Schuster* [#115-1] ¶ 15. Defendant states that at the time of her discharge, Plaintiff was making $20.22 per hour, the highest rate paid to any Job Planner

within Defendant's Colorado operations. *Id.* Only one other Job Planner was paid at a similar level, Joe Valdez, and he had been employed by Defendant three months longer than Plaintiff. *Id.* All other Job Planners made on average $1.00-$1.80 per hour less than Plaintiff. *Id.*

The Court finds that Plaintiff has produced no evidence to show that she was paid less than other male Job Planners employed by Defendant. *See Sprague*, 129 F.3d at 1364. Plaintiff's conclusory statement that she made less than two other employees is simply not sufficient to establish that her pay was less than her male counterparts. Thus, the Court finds that plaintiff has not stated a prima facie case under the EPA.

Therefore, the Court concludes that Plaintiff has not demonstrated that there is a genuine issue of material fact in connection with her EPA claim. Accordingly, the Court **recommends** that summary judgment should enter in favor of Defendant on Plaintiff's EPA claim.

## E.    Claim Two: FLSA

Plaintiff asserts a claim for overtime pay pursuant to the FLSA. *See Am. Compl.* [#13] ¶¶ 111-118. Defendant avers that this claim fails as a matter of law because Plaintiff failed to provide any facts regarding the alleged overtime hours she worked. *Def.'s Motion* [#115] at 10-11.

The purpose behind the FLSA is to "protect all covered workers from substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Fright Sys., Inc.*, 450 U.S. 728, 739 (1981); citing 29 U.S.C. § 202(a)). In part, the FLSA requires employers to pay

employees for hours worked in excess of forty per week at a rate of 1.5 times the employees' regular wages.  *See* 29 U.S.C. § 207(a).  This requirement does not apply to all employees, however.  *See* 29 U.S.C. § 213.

In connection with this claim, Plaintiff asserts that she is an employee within the meaning of the FLSA, that Defendant is an employer within the meaning of the FLSA, and that Plaintiff is entitled to overtime pay for all overtime worked in her capacity as a Job Planner for Defendant.  *See Am. Compl.* [#13] at ¶¶ 112-114.  She states that "Defendant waived the corresponding FLSA exemptions that might otherwise correspond to her work because it paid other employees per diems and allowed them to leave work early on Fridays in compensation for the overtime that they worked earlier that same week, while not affording the Plaintiff with the same benefits."  *Id.* ¶ 115.  Plaintiff asserts that she was also "repeatedly required to serve as General Foreman without receiving any additional compensation, such as that which was paid to Mark Denell when he filled in as General Foreman."  *Id.* ¶ 117.

"To make a case for overtime compensation, plaintiffs must show that they performed more than forty hours of work in a week but were not paid for the excess time." *Beasley v. Hillcrest Medical Ctr.*, 78 Fed. App'x 67, 69 (10th Cir. Oct. 9, 2003) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (holding that, pursuant to the FLSA, a plaintiff has the burden of proving that she "has in fact performed work for which [she] was improperly compensated and . . . [must] produce[ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"). Plaintiff has failed to do so.  She has not provided evidence supporting an inference that she worked overtime, nor has she provided evidence regarding the number of overtime

hours she allegedly worked, the dates when she allegedly worked overtime, or any details aside from her conclusory statement that other Job Planners worked overtime and were compensated for such overtime.  She has also not provided any evidence regarding the dates when she served as General Foreman but was not compensated for doing so, or evidence that another person was provided additional pay when he filled in as General Foreman, aside from her vague, general, and conclusory statements.  Without such evidence, Plaintiff's claim fails.

Therefore, the Court concludes that Plaintiff has not demonstrated that there is a genuine issue of material fact in connection with her FLSA claim.  Accordingly, the Court **recommends** that summary judgment should enter in favor of Defendant on Plaintiff's FLSA claim.

**F.     Claim Seven: ERISA**

Plaintiff asserts a claim for monies from her retirement account pursuant to ERISA. *See Am. Compl.* [#13] ¶¶ 111-118.  In response, Defendant asserts that Plaintiff failed to exhaust her administrative remedies in connection with her ERISA claim.  *Def.'s Motion* [#115] at 17.

ERISA requires a plaintiff to exhaust her administrative remedies before seeking relief in federal court.  *See Lewis v. U.F.C.W. Dist. Union Local Two & Employers Pension Fund*, 273 Fed. App'x 765, 767 (10th Cir. Apr. 14, 2008) (citing *McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1263 (10th Cir. 1998)).  This requirement "derives from the exhaustion doctrine permeating all judicial review of administrative agency action, and aligns with ERISA's overall structure of placing primary responsibility for claim resolution on fund

trustees." *McGraw*, 137 F.3d at 1263 (citation omitted).  Any other procedure would permit "premature judicial interference" and "would impede those internal processes which result in a completed record of decision making for a court to review."  *Id.*  "The doctrine is necessary to keep from turning every ERISA action, literally, into a federal case." *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999) (quotation omitted).  In general, the Court may waive the exhaustion requirement only "where resort to administrative remedies would be clearly useless."  *McGraw*, 137 F.3d at 1264 (internal quotation omitted).

Here, Plaintiff states that she is entitled to her retirement plan from Defendant pursuant to her employment agreement; that her plan is maintained by Heartland Financial Resource Group/Principal Financial Group; that Defendant exercises authority and control over the management of unpaid plan assets; and that Plaintiff was fully vested in Defendant's Employee Stock Ownership Plan but that Defendant deducted monies from her retirement account without her knowledge or permission.  *Am. Compl.* [#13] ¶¶ 171-176.  However, Plaintiff does not provide any evidence that she exhausted her administrative remedies as required by ERISA.  *See McGraw*, 137 F.3d at 1263.

Therefore, the Court concludes that Plaintiff has not demonstrated that there is a genuine issue of material fact in connection with her ERISA claim.  Accordingly, the Court **recommends** that summary judgment should enter in favor of Defendant on Plaintiff's ERISA claim.

## G.     Claim Ten: Unjust Enrichment

Plaintiff asserts that she "conferred a benefit on Defendant by performing work as

a Job Planner at an agreed upon price, and thereby enabling the payment for tree trimming services of Defendant." *Am. Compl.* [#13] ¶ 191. In response, Defendant asserts that this claim is preempted by her other federal law claims. *Def.'s Motion* [#115] at 19-20.

"Under Colorado law, a plaintiff seeking to recover under a theory of quantum meruit, or unjust enrichment, must establish that '(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying.'" *Green v. Catholic Health Initiatives Colo.*, No. 05-cv-01058-WYD-MEH, 2007 WL 646285, at *5 (D. Colo. Feb. 28, 2007) (quoting *Salzman v. Bachrach*, 996 P.2d 1263, 1265-66 (Colo. 2000)).

Plaintiff's claim fails for three reasons. First, there is no dispute that Plaintiff was paid for the work she performed for Defendant and, to the extent that she claims that she was paid less than her male counterparts, her claim is preempted by her EPA claim. *See Aff. of Schuster* [#115-1] ¶ 15; *Browning v. Sw. Research Inst.*, 288 Fed. App'x 170, 178 (5th Cir. 2008) (acknowledging that the EPA is part of the FLSA); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (collecting cases demonstrating that the FLSA preempts duplicative state law claims). Second, as pointed out by Defendant, to the extent that Plaintiff is claiming that she was not paid overtime, her claim is preempted by her FLSA claim. *Def.'s Motion* [#115] at 20 n.6 (citing *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1071 (D. Minn. 2011) (finding that the plaintiff's unjust enrichment claim was preempted by the FLSA because the plaintiff did not demonstrate that his claim was "based on anything other than unpaid overtime"); *Botello v. COI Telecom, LLC*, No. SA-10-CV-305-XR, 2010 WL 3784202, at *4 (W.D. Tex. Sept. 21, 2010) (dismissing the plaintiff's claim for unjust enrichment as far as it related to "any claim of failure to pay minimum wages or

34

overtime under the FLSA")).   Third, to the extent that Plaintiff is claiming that she is entitled

to distributions under the Plan, her claim is preempted by ERISA.  *Access Mediquip L.L.C.*

*v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 386-87 (5ᵗʰ Cir. 2011) (stating that unjust

enrichment claims are preempted by ERISA); *Stanley v. Int'l Brotherhood of Electrical*

*Workers, AFL-CIO CLC*, 207 Fed. App'x 185, 190 (3d Cir. 2006).

Therefore, the Court concludes that Plaintiff has not demonstrated that there is a

genuine issue of material fact in connection with her unjust enrichment claim.   Accordingly,

the Court **recommends** that summary judgment should enter in favor of Defendant on

Plaintiff's unjust enrichment claim.

## H.    Claim Nine: Promissory Estoppel

Finally, Plaintiff asserts a claim for promissory estoppel.  *Am. Compl.* [#13] ¶¶ 184-

188.   Plaintiff states that she "entered into an employment agreement with Defendant

wherein the Defendant promised not to discriminate on the basis of gender or age, or to

retaliate against Plaintiff for exercising her rights as an employee, which promises the

Defendant should reasonably have expected the employee would consider as a

commitment from Defendant." *Id.* ¶ 185.  Defendant asserts that this claim fails as a matter

of law.  *Def.'s Motion* [#115] at 18-19.

To prove a claim of promissory estoppel under Colorado law, Plaintiff must

demonstrate: (1) that Defendant made a promise to her; (2) that Defendant could

reasonably have expected Plaintiff to rely on that promise; (3) Plaintiff did, in fact, rely upon

the promise; and (4) that the promise must be enforced to prevent injustice.  *Nelson v.*

*Elway*, 908 P.2d 102, 110 (Colo, 1995).  Defendant asserts that Plaintiff has not established

that it made any promise to her.

"To be enforceable on a promissory estoppel theory, a promise must be one which the employee could reasonably consider to be a commitment, not a mere description of the employer's policies." *Endahl v. Vinnell Corp.*, No. 04-CV-00426-MSK-PAC, 2006 WL 57496, at *9 (D. Colo. Jan. 10, 2006) (citing *George v. Ute Water Conservancy District*, 950 P.2d 1195, 1198 (Colo. App. 1997)).  A promise to abide by applicable employment laws, such as those on which Plaintiff apparently relies, is completely illusory; the employer is required to abide by the laws whether it promises to do so or not. *Endahl*, 2006 WL 57496, at *9.  In other words, an employer agreeing to abide by the law is not "committing" itself to perform some act it is not already required to do.  *Id.*  At best, a promise of nondiscrimination is a statement of the employer's policies.  *Id.*  Accordingly, a promise of compliance with anti-discrimination laws is not enforceable under a theory of promissory estoppel.  *Id.*

Therefore, the Court concludes that Defendant is entitled to summary judgment as a matter of law on Plaintiff's promissory estoppel claim.  Accordingly, the Court **recommends** that summary judgment should enter in favor of Defendant on Plaintiff's promissory estoppel claim.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Plaintiff's Motion [#81] be **DENIED** and that Defendant's Motion [#115] be **GRANTED in part and DENIED in part**, as outlined above.

The Court FURTHER **RECOMMENDS** that Plaintiff's retaliation claim (Claim Eight)

and the portions of Plaintiff's age and discrimination claims relating to failure to promote to the Operations Manager position (Claim Three and Claim Four) be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

The Court FURTHER **RECOMMENDS** that summary judgment enter in favor of Defendant on the remainder of Plaintiff's claims except for her failure-to-train claim based on gender discrimination (Claim Three).

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  November 13, 2012          BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge